KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 BRISTOL STREET, SUITE C204
COSTA MESA, CA 92626
TELEPHONE: (855) 505-5588

E-MAIL: KARREN.KENNEY@GMAIL.COM

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL BAUER. | Case No. 24CR00135-FWS<br><br>**DEFENDANT'S MOTION IN LIMINE FOR DISCLOSURE OF MORONGO ATTRIBUTION EVIDENCE AND AN EVIDENTIARY HEARING; AND TO EXCLUDE MORONGO EVIDENCE ABSENT AN ADEQUATE FOUNDATION CONNECTING THE EVIDENCE TO DEFENDANT** |

## I. INTRODUCTION

Defendant Michael Anthony Bauer respectfully moves for an order requiring the Government to disclose any remaining Morongo Casino evidence or information within the possession, custody, or control of the prosecution team bearing upon the **identity of the person actually responsible for the activity the Government seeks to attribute to Bauer**, and for an evidentiary hearing concerning the foundation, limitations, and permissible use of the Government's Morongo evidence.

If the Government cannot establish a reliable evidentiary foundation connecting Bauer personally to the Morongo account activity, transactions, devices, credentials, or network activity

upon which it intends to rely, Defendant requests that the Court exclude that evidence to the extent it is offered as proof that Bauer was the person who committed the charged acts.

The issue is narrow. The Government intends to prove that seventeen of forty-six fraudulent EDD claims originated from an IP address located at Morongo Casino. The Government further alleges that Bauer personally withdrew approximately $1,000 in fraudulent benefits at or near Morongo on September 3, 2020, and another approximately $1,000 at Morongo on September 14, 2020. But the Morongo materials produced by the Government, Bates USAO_00000316 through USAO_00000343, do not identify the human being who personally performed the relevant activity. They principally establish that Morongo maintained a patron account in Bauer's name and recorded gaming and comp activity under that account. The distinction between **an account associated with Bauer** and **proof that Bauer personally used the account** is critical.

The same is true of the Government's IP evidence. Evidence that Internet activity passed through a public IP address associated with Morongo may establish a network location. It does not, without additional attribution evidence, establish which individual generated the Internet traffic. The defense diligently sought the underlying evidence capable of answering those questions. It pursued the records through a CJA investigator, direct communications with Morongo's Legal Department, formal Rule 17(c) process, supplemental discovery demands, and requests for inspection. Morongo has now definitively refused to comply with Defendant's subpoena on sovereign-immunity grounds, expressly relying upon *United States v. James*, 980 F.2d 1314 (9th Cir. 1992).

Defendant does not ask this Court to override tribal sovereign immunity. Rather, because Defendant is now foreclosed from independently obtaining the attribution evidence from Morongo, the Government should be required to establish outside the presence of the jury

exactly what its Morongo evidence proves, and what it does not. Evidence of association should not be converted into evidence of identity without an adequate foundation.

## II. THE GOVERNMENT INTENDS TO USE MORONGO AS AN IMPORTANT PART OF ITS IDENTITY THEORY

The Government's trial memorandum expressly states that seventeen of the forty-six allegedly fraudulent claims originated from the same IP address located at Morongo Casino. The Government further alleges that Bauer personally conducted two of the charged transactions at or near Morongo:

- an approximately $1,000 ATM withdrawal on September 3, 2020; and
- an approximately $1,000 ATM withdrawal on September 14, 2020.

Thus, Morongo is not peripheral to the Government's proof. The Government intends to use the location, casino records, and network evidence together as circumstantial evidence tying Bauer personally to the alleged fraud. That makes accurate attribution essential.

## III. THE ACTUAL MORONGO PRODUCTION DOES NOT ESTABLISH WHO PERSONALLY PERFORMED THE RELEVANT ACTIVITY

The Government has represented that USAO_316–344 comprise the entirety of the materials it secured from Morongo. The defense has reviewed that production. USAO_316 reflects that a document was produced in native format. The subsequent records include Morongo Daily Gaming Activity reports and a lifetime Patron Comp History associated with patron account number 263165 in the name of Michael Bauer. Significantly, the 2020 Daily Gaming Activity report itself expressly states that its information is based upon "rating data," is **"not audited,"** and "may not reflect your actual gaming results for the year." The report reflects activity recorded under the Bauer patron account on September 3 and September 14, 2020, the same dates underlying Counts Four and Five.

But those reports do not identify: the person physically using the player card; the person at the gaming machine; the person possessing the relevant credential; the person occupying a hotel room; the device responsible for network activity; the individual responsible for a particular Internet session; or the person who actually conducted the charged ATM transactions.

Likewise, the Patron Comp History associates benefits and activity with Bauer's account but does not itself establish that Bauer was the person who physically used or redeemed the benefit. Some entries contain employee or system identifiers, including entries reflecting "KNGUYEN." That uncertainty illustrates the problem: the summary-level documents are insufficient by themselves to identify the relevant actors. USAO_342–343 contains a custodian declaration from Sean Sadeghi certifying the Morongo materials as business records. But authentication and attribution are separate questions. A business record may be authentic and nevertheless fail to establish **who personally performed the activity reflected in it**.

## IV. THE GOVERNMENT'S MORONGO IP EVIDENCE PRESENTS AN EVEN MORE SIGNIFICANT ATTRIBUTION PROBLEM

The Government's allegation that seventeen fraudulent applications originated from a Morongo IP address does not itself identify Bauer as the user. For precisely that reason, Defendant's subpoena requested documents identifying Morongo's ownership, assignment, control, and use of public IP address 192.243.68.66 and related addresses, including whether the address served the hotel, casino, guest Wi-Fi, business systems, or another function.

Defendant further requested any existing or previously preserved captive-portal, DHCP, NAT, firewall, wireless-access-point, device, user, room, reservation, authentication, or similar records capable of associating the public IP address with a particular internal device, user, account, hotel room, access point, or session on the dates relied upon by the Government. None of those attribution records appears in USAO_316–343. A public IP address associated with a hotel or casino network is not synonymous with a particular human being. Absent additional

evidence, it establishes where Internet traffic emerged onto the public Internet—not necessarily who generated that traffic.

If the Government intends to argue that fraudulent applications originating from a Morongo IP address were therefore submitted by Bauer, it must establish an admissible factual basis connecting Bauer to the particular device, session, room, account, or user responsible.

## V. THE DEFENSE DILIGENTLY SOUGHT THE MISSING ATTRIBUTION EVIDENCE

The defense began pursuing the underlying records before seeking relief from this Court. On June 18, 2026, CJA-appointed defense investigator Randy Candias contacted Morongo's Legal Department, identified the federal criminal case, explained that Morongo had previously produced records to the FBI, and sought direction concerning a defense subpoena for additional records.

On June 22, Morongo attorney Max Spivak responded and requested a complete copy of Morongo's previously authenticated production so that Morongo could verify the defense request. The defense investigator promptly explained that the Government had designated the prior discovery subject to a protective order and that he therefore could not simply retransmit those materials. He supplied defense counsel's information and offered alternative means of verification. When no production followed, the investigator again contacted Morongo on July 14, requested an update, and asked what additional information the defense could provide to facilitate the production. The defense thereafter pursued formal Rule 17(c) process. The resulting subpoena specifically sought: records establishing cross-links among Bauer, Minh Nguyen, and Gustavo Montano; records identifying every person who opened, accessed, modified, used, or received benefits from Bauer's account; transaction-level records for September 3 and September 14, 2020; fraud, account-sharing, duplicate-account, security, and account-takeover records; and IP/session attribution records.

Thus, the defense did not merely request "more Morongo records." It identified precisely the records necessary to test the Government's attribution theory.

**VI. MORONGO HAS NOW FORMALLY INVOKED SOVEREIGN IMMUNITY AND REFUSED PRODUCTION**

The uncertainty concerning whether Morongo would cooperate with the defense is now resolved. In a July 30, 2026 letter, Morongo expressly advised defense counsel that the Tribe **"shall not comply with the subpoena."** Morongo asserted that the subpoena operates against the Tribe itself and that the Tribe, its governmental subdivisions, tribal enterprises, and officers and employees acting in their official capacities are protected by sovereign immunity.

Morongo further asserted that tribal immunity extends to subpoenas seeking tribal records in litigation in which the Tribe is not a party and expressly relied upon *United States v. James*, 980 F.2d 1314, 1319–20 (9th Cir. 1992), in concluding: "Therefore, your subpoena is not enforceable against the Tribe." Defendant therefore does not ask this Court to compel Morongo to produce the requested records contrary to controlling sovereign-immunity principles. The relevance of Morongo's refusal is different. The defense has now exhausted the realistic avenues available to independently obtain the underlying attribution records.

The Government, meanwhile, intends to use Morongo evidence affirmatively against Bauer. That creates a concrete evidentiary issue that should be resolved before the jury hears the evidence.

**VII. MORONGO'S IMMUNITY DOES NOT SUPPLY THE MISSING FOUNDATION FOR THE GOVERNMENT'S IDENTITY INFERENCE**

Defendant does not contend that Morongo's invocation of sovereign immunity automatically renders the Government's Morongo evidence inadmissible. Nor does Defendant seek a discovery sanction against the Government for records exclusively possessed by Morongo. The point is narrower. If the Government's existing evidence establishes only that: a

Morongo account existed in Bauer's name; activity was recorded under that account; or Internet traffic originated from a public Morongo IP address, then the Government should not be permitted to convert those facts into testimony or argument that Bauer personally engaged in the activity unless it possesses additional admissible evidence supporting that attribution.

Sovereign immunity determines whether the Tribe can be compelled to produce records. It does not determine what evidentiary inference may properly be drawn from the records already in the Government's possession. The missing attribution evidence cannot simply be supplied through prosecutorial argument.

**VIII. THE GOVERNMENT'S OWN MORONGO COMMUNICATIONS WARRANT A FOUNDATION HEARING**

The Government's discovery confirms that federal investigators communicated substantively with Morongo concerning the records and their use. On August 7, 2023, Martin Madrigal transmitted six identified files to FBI Special Agent Elias Guerrero: 263165.xlsx; 263165_2020 WL.pdf; 263165_2021 WL.pdf; 263165_2022 WL.pdf; 263165_Comp History.pdf; and Custodian of Records.pdf.

On August 30, 2023, Agent Guerrero then contacted Madrigal and stated that he had questions about **"the subpoena production and surveillance footage."** He then requested a telephone call, instead of documenting all communication with Morongo. In February 2026, Agent Guerrero again sought a telephone discussion regarding "the records your organization provided the FBI back in 2023." Following that telephone discussion, Guerrero confirmed that the Government intended to proceed to trial against Bauer and wanted a Morongo witness to testify regarding the records. **The defense has not received a report or contemporaneous memorandum detailing what information Morongo conveyed during those substantive telephone communications.**

Accordingly, before allowing the Government to attribute Morongo activity personally to Bauer, the Court should determine: what Morongo told federal investigators concerning the records; whether Morongo could identify the individual user; whether cards or credentials could be shared, duplicated, replaced, or accessed by another person; whether the IP address served multiple users; whether surveillance existed; what limitations applied to the records; and what factual foundation the Government proposes to use to connect the particular activity to Bauer.

## IX. RULE 16 AND BRADY REQUIRE DISCLOSURE OF ATTRIBUTION INFORMATION ACTUALLY POSSESSED OR KNOWN BY THE PROSECUTION TEAM

Federal Rule of Criminal Procedure 16(a)(1)(E) requires disclosure of documents and data within the Government's possession, custody, or control when material to preparing the defense or when the Government intends to use those materials in its case-in-chief. Both grounds are implicated here.

Likewise, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), require disclosure of favorable material evidence known to those acting on the Government's behalf in the case. Accordingly, if a participating agent learned from Morongo that: the IP address served numerous users; Morongo could not identify the person responsible for a particular session; another person used Bauer's account or credential; cards or accounts could be shared; Nguyen or Montano was linked to the relevant activity; surveillance was unavailable; or the records were incapable of establishing personal attribution, such information is material to the defense whether it was communicated in writing or orally.

The defense is not asking the Government to create evidence. It is asking for disclosure of relevant attribution information actually known to or possessed by the prosecution team.

## X. THE COURT SHOULD HOLD AN EVIDENTIARY HEARING BEFORE THE MORONGO EVIDENCE IS PRESENTED TO THE JURY

A pretrial evidentiary hearing will permit the Court to separate what the Morongo evidence actually establishes from what the Government proposes to infer from it. At that hearing, Defendant respectfully requests that the Government be required to identify:

1. the precise Morongo exhibits it intends to offer;
2. the witness or witnesses through whom it intends to offer them;
3. the foundation for concluding that any particular activity recorded under account 263165 was personally performed by Bauer;
4. the foundation for connecting Bauer to any particular September 3 or September 14 transaction;
5. the basis for attributing activity from public IP address 192.243.68.66 to Bauer;
6. whether the Government possesses any device, session, hotel-room, access-point, credential, surveillance, photographic, account-access, or comparable attribution evidence;
7. what information Morongo communicated to participating agents concerning the interpretation and limitations of the records; and
8. what the Government intends to argue to the jury regarding identity based upon the Morongo evidence.

This procedure will avoid prejudice and prevent an improper inference from reaching the jury before the Court determines whether an adequate foundation exists.

**XI. ABSENT AN ADEQUATE FOUNDATION, MORONGO ASSOCIATION EVIDENCE SHOULD NOT BE ADMITTED AS PROOF OF BAUER'S IDENTITY**

Federal Rule of Evidence 403 authorizes exclusion where the probative value of evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Those dangers are substantial here. The Government proposes to establish: that Bauer had a Morongo account; that certain activity was recorded under that account; that two charged

transactions occurred at or near Morongo; and that seventeen allegedly fraudulent applications originated from a Morongo IP address.

Placed together, those facts create an obvious risk that the jury will infer: **Bauer was at Morongo; therefore Bauer must have been the person conducting all of the Morongo-related activity.** But that conclusion requires a separate evidentiary link. An account association is not proof of personal use. A public IP address is not proof of individual identity. A business-record certification authenticates a record; it does not establish who was physically responsible for the conduct recorded. The danger is particularly acute because the defense has diligently sought the very records necessary to test that inference, and Morongo has now formally invoked sovereign immunity and refused production.

If the Government possesses independent attribution evidence, it can present that evidence and establish the required foundation. If it does not, it should not be permitted to use the evidentiary gap against Defendant.

**XII. RELIEF REQUESTED**

Defendant respectfully requests that the Court:

1. order the Government to disclose any presently unproduced Morongo-related attribution information within the possession, custody, or control of any prosecution team member;
2. require disclosure of favorable information communicated by Morongo personnel to members of the prosecution team concerning account usage, network usage, surveillance, shared credentials, identity, or the limitations of the Morongo records;
3. conduct an evidentiary hearing outside the presence of the jury regarding the Government's proposed Morongo evidence and the foundation for attributing that evidence personally to Bauer;
4. preclude the Government from arguing or eliciting testimony that a Morongo patron account, player-card record, gaming record, comp record, location, or IP address

establishes that Bauer personally performed the associated conduct absent a reliable evidentiary foundation; and

5. exclude Morongo evidence offered to establish Bauer's identity or participation where the Government cannot demonstrate an adequate foundation connecting Bauer personally to the particular transaction, account use, device, credential, session, or network activity.

**XIII. CONCLUSION**

The Government may possess authentic records showing an association between Michael Bauer and Morongo. The disputed issue is what that association actually proves. The existing production does not itself establish that Bauer personally used the relevant account, card, device, hotel facility, transaction mechanism, or Internet connection.

The defense diligently sought the underlying evidence necessary to resolve that question. Morongo has now formally refused production based upon tribal sovereign immunity. That sovereign immunity should be respected. But it should not be transformed into an evidentiary presumption in the Government's favor. If the Government has evidence reliably connecting Bauer to the particular activity, it should establish that foundation outside the jury's presence. If it does not, evidence establishing only an association with Morongo should not be admitted or argued as proof that Bauer was the person who committed the charged acts.

Defendant respectfully requests that the Court grant the motion.

DATED: August 17, 2026 Respectfully submitted,

Karren Kenney

Karren Kenney
Attorney for Michael Bauer

**DECLARATION OF KARREN KENNEY IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE REGARDING MORONGO EVIDENCE**

I, Karren M. Kenney, declare:

1. I am an attorney licensed to practice law in California and counsel of record for Defendant Michael Anthony Bauer in the above-captioned matter. I have personal knowledge of the matters stated herein based upon my representation of Mr. Bauer, my review of discovery produced by the Government, my communications with Government counsel, and communications received from my CJA-appointed investigator in connection with this matter. If called as a witness, I could and would testify competently to these matters.
2. I submit this declaration in support of Defendant's Motion in Limine for Disclosure of Morongo Attribution Evidence and an Evidentiary Hearing; and to Exclude Morongo Evidence Absent an Adequate Foundation Connecting the Evidence to Defendant.
3. The Government has filed a trial memorandum stating that seventeen of the forty-six allegedly fraudulent claims originated from the same IP address located at Morongo Casino.
4. The Government further alleges that Mr. Bauer personally withdrew approximately $1,000 at or near Morongo Casino on September 3, 2020, using a PUA benefit debit card issued in the name of I.A., and approximately $1,000 at Morongo Casino on September 14, 2020, using a PUA debit card issued in the name of J.G.
5. The Government produced Morongo records bearing Bates numbers USAO_00000316 through USAO_00000343. I received those materials through discovery in this case and have reviewed them. Attached hereto as **Exhibit A** is a

true and correct copy of the Morongo materials bearing Bates numbers USAO_00000316 through USAO_00000343. Based upon my review of USAO_316–343, those records do not themselves identify the individual physically using the player card, account, credential, gaming machine, hotel benefit, device, or Internet connection associated with the recorded activity. The Patron Comp History includes employee or system identifiers associated with certain entries. For example, some entries contain the identifier "KNGUYEN."

6. The Government also produced FBI/Morongo email correspondence bearing Bates numbers USAO_00002541 through USAO_00002548. I received those documents from the Government in discovery and reviewed them in connection with this matter. Attached hereto as **Exhibit B** is a true and correct copy of that Government-produced FBI/Morongo correspondence.

7. The August 7, 2023 transmittal identifies six attachments sent from Morongo to FBI Special Agent Elias Guerrero: 263165.xlsx; 263165_2020 WL.pdf; 263165_2021 WL.pdf; 263165_2022 WL.pdf; 263165_Comp History.pdf; and Custodian of Records.pdf.

8. On August 30, 2023, Agent Guerrero emailed Martin Madrigal and stated that he had questions concerning "the subpoena production and surveillance footage" and requested a telephone call. Mr. Madrigal thereafter responded that Agent Guerrero could call. I have not received an FD-302, memorandum, recording, or contemporaneous notes memorializing the substance of the resulting conversation concerning the production and surveillance.

9. On February 18, 2026, Agent Guerrero again requested a call concerning "the records your organization provided the FBI back in 2023." After a telephone discussion, Agent Guerrero emailed Mr. Madrigal and stated that the Government

was proceeding to trial against Mr. Bauer and needed a witness to testify concerning the Morongo records. The email further stated that the Government wanted ample time to meet with the witness for trial preparation. I have not received a substantive report or contemporaneous notes describing what information was conveyed during that February 2026 telephone discussion beyond the disclosed emails.

10. Because the Government intends to use Morongo evidence as part of its proof against Mr. Bauer, I determined that the defense needed to investigate whether underlying Morongo records could identify who actually accessed or used the relevant patron account, player card, credential, transaction, hotel facility, device, or network connection.

11. I retained CJA-appointed investigator Randy Candias of The LER Group, Inc. to assist with that investigation. On June 18, 2026, Mr. Candias contacted Morongo's Legal Department. He identified himself as a CJA federal court-appointed investigator working on behalf of defense counsel, identified the Bauer matter, explained that Morongo had previously provided records to the FBI, and sought guidance concerning service or delivery of a defense subpoena seeking additional records. On June 22, 2026, Morongo attorney Max Spivak responded and for unknown reasons, requested a complete copy of the Morongo records authenticated in 2023 so that Morongo could verify the defense request and associated materials. Mr. Candias responded that same day and explained that the Government had placed the previously produced Morongo discovery under a protective order and that he therefore could not simply transmit those discovery materials to Morongo. He provided my contact information and offered alternative means of verification. When the requested records were not produced, Mr. Candias

again contacted Mr. Spivak on July 14, 2026, requested an update, explained that the defense needed the information for trial preparation, and again asked what the defense could provide to facilitate the request. Attached hereto as **Exhibit C** is a true and correct copy of the June and July 2026 correspondence between Mr. Candias and Morongo counsel. I was copied on portions of that correspondence and received copies through Mr. Candias in the ordinary course of his investigative work on behalf of the defense.

12. The defense thereafter obtained a clerk-issued subpoena pursuant to Federal Rule of Criminal Procedure 17(c). Attached hereto as **Exhibit D** is a true and correct copy of that subpoena and its Attachment A. The subpoena sought specific attribution evidence, including records showing whether alleged co-schemers Minh Nguyen or Gustavo Montano were linked to or used the Bauer account or shared identifying information, devices, hotel rooms, player cards, transactions, or other records with the Bauer account. The subpoena sought records identifying each person who opened, accessed, modified, requested a card for, used, or received benefits from the Bauer Account. Because of the Government's IP theory, the subpoena also sought Morongo network records identifying the assignment and use of public IP address 192.243.68.66 and any available DHCP, NAT, captive-portal, firewall, wireless access point, device, user, account, hotel room, reservation, authentication, or comparable records capable of correlating that public address with a particular person or session.

13. On or about July 30, 2026, Morongo's Legal Department sent a written response to the defense subpoena. I did not receive this response until it was emailed to me on August 17, 2026, after it was apparently signed for by someone who is not an employee of my firm. Attached hereto as **Exhibit E** is a true and correct copy of

Morongo's August 17, 2026 email with it's attached July 30, 2026 letter responding to the defense subpoena. In that letter, Morongo stated that it had received the subpoena by email and advised that the Tribe "shall not comply with the subpoena." Morongo asserted that the subpoena operated against the Tribe itself and that Morongo, its governmental subdivisions, tribal enterprises, and officials acting within the scope of their authority were protected by sovereign immunity. Morongo further asserted that its immunity extended to subpoenas for tribal records and expressly cited *United States v. James*, 980 F.2d 1314, 1319–20 (9th Cir. 1992), in concluding that Defendant's subpoena "is not enforceable against the Tribe."

14. Separately, on July 23, 2026, I served a supplemental discovery, preservation, and inspection request upon Government counsel concerning the Morongo evidence. Attached hereto as **Exhibit F** is a true and correct copy of my July 23, 2026 request and the Government's responsive July 28 correspondence. I personally sent and received those communications in connection with my representation of Mr. Bauer. My request sought, among other things, the complete Morongo production, native electronic files, communications, chain-of-custody information, processing and conversion information, authentication materials, and information indicating that the Morongo records were incomplete, altered, summarized, attributed to the wrong person, associated with shared or replacement credentials, or subject to use by another person. On July 28, 2026, Assistant United States Attorney Yervant Hagopian responded that USAO_316–344 "comprise the entirety of the materials secured from Morongo," that USAO_2541–2548 were "the entirety of email communications between law enforcement and Morongo Casino," and that there was no physical medium associated with the Morongo discovery.

15. Based upon the Government's representation, I understand that USAO_316–344 constitute the complete set of Morongo records the Government contends it secured from Morongo. Based upon my review of those materials, they do not include records identifying the particular individual who personally used the Bauer patron account or player card for the relevant activity. They do not contain account-access logs, photographs identifying the user, duplicate/shared-account records, device-user correlation records, hotel-guest attribution evidence, or comparable evidence identifying the person responsible for the relevant activity. They also do not contain DHCP, NAT, captive-portal, wireless-access-point, device, room, session, or comparable records correlating public IP address 192.243.68.66 with a particular user.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: August 17, 2026

Karren Kenney

Karren Kenney